UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEIL SPIZIZEN, Individually,
NEIL SPIZIZEN REVOCABLE LIVING
TRUST, U/A/D 7/3/86, and
CRESCENDO HOMES, INC.,

      Plaintiffs,

                                        Case No. 09-11713
v.                                      Hon. Gerald E. Rosen

NATIONAL CITY CORPORATION, *et al.,*

      Defendants.
_____/

**OPINION AND ORDER REGARDING DEFENDANTS'
MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR REMAND**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on      November 10, 2009

PRESENT: Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiffs Neil Spizizen, Neil Spizizen Revocable Living Trust, and Crescendo Homes, Inc. commenced this suit in state court on April 3, 2009, asserting state-law claims of conversion, breach of contract, and breach of implied covenant of good faith and fair dealing against Defendants National City Corporation, PNC Financial Services Group, Inc., and several National City employees. Plaintiffs' claims rest upon allegations that Defendants wrongfully misappropriated funds and securities from their National City

accounts to meet payment obligations on loans they had obtained from National City, despite the fact that Plaintiffs allegedly were current on all of their loan obligations. Defendants National City and PNC removed the case to this Court on May 5, 2009, citing diversity of citizenship as between Plaintiffs and these two corporate Defendants, and asserting that the non-diverse individuals named as Defendants in Plaintiffs' complaint could be disregarded under the doctrine of fraudulent joinder.

Two motions presently are pending before the Court. First, on May 28, 2009, Plaintiffs moved for remand of this case to state court, arguing that they have asserted viable state-law claims of conversion against the individual Defendants.[1] Next, on May 11, 2009, Defendants moved for dismissal of counts I and III of Plaintiffs' complaint, contending (i) that Plaintiffs have failed to state a viable conversion claim against any of the Defendants, whether the individual National City employees or the two corporate Defendants, and (ii) that Michigan law does not recognize a separate, stand-alone claim for breach of an implied covenant of good faith and fair dealing.

Each of these two motions has been fully briefed by the parties. Having reviewed the parties' written submissions in support of and opposition to these motions, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are sufficiently presented in these materials, and that oral argument would not assist in the resolution of these motions. Accordingly, the Court will decide the parties'

---

[1] The Court also issued a May 21, 2009 order to show cause in which it asked Defendants to address their claim that the individual Defendants have been fraudulently joined in this action.

motions "on the briefs." *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on these motions.

## II. FACTUAL BACKGROUND

The parties' motions rest exclusively upon the allegations of Plaintiffs' complaint. Accordingly, the following recitation of facts derives exclusively from this source, with Plaintiffs' allegations accepted as true for present purposes.

Plaintiffs Neil Spizizen and Crescendo Homes, Inc., a real estate development company owned and operated by Spizizen and others, have had a longstanding relationship with Defendant National City Corporation,[2] and these parties have been involved in a series of loan transactions for the purchase and development of various Michigan properties. Plaintiffs' complaint cites three such transactions, occurring in January of 2002, March of 2006, and February of 2007 (collectively, the "National City Loans"), with each such loan or extension of credit secured by the personal guaranties of Plaintiff Spizizen and others. In addition, Crescendo has an account with National City (the "Crescendo Account") that is used to meet payroll and other financial obligations, and the third Plaintiff, the Neil Spizizen Revocable Living Trust, also has a separate account with National City (the "Trust Account") that consists of over $1.8 million in securities.

---

[2]The other corporate Defendant, PNC Financial Services Group, Inc., recently merged with National City, with PNC as the surviving corporation and National City becoming a wholly-owned subsidiary of PNC. According to the complaint, PNC failed to secure the appropriate authorization to conduct business in the State of Michigan, nor has it registered for an assumed name for doing business as National City.

As of March 1, 2009, the borrowers remained current on all of their payment obligations under the three above-cited loan transactions.  Nonetheless, Plaintiffs allege that on or around March 3, 2009, National City "unilaterally seized the funds and securities in both the Crescendo Account and the Spizizen Trust Account without any notice, right or authorization whatsoever, and despite the fact that the Spizizen Trust was not a guarantor on any of the National City Loans." (Complaint at ¶ 32.)  Plaintiffs allege that they first learned of this misappropriation on March 4, 2009, when a Crescendo representative was unable to withdraw funds from the Crescendo Account, and that National City has refused their demands to return their funds and securities.  Plaintiffs further allege that even if any of the National City Loans were in default, which they deny, the amounts misappropriated by National City from the Crescendo and Trust Accounts far exceed the obligations owed by Crescendo and Spizizen under the National City Loans.

As noted, the complaint names four National City employees as Defendants.  The complaint's allegations as to these Defendants, however, are quite limited.  Specifically, the complaint alleges (i) that Defendant Stanley Szasna advised Plaintiffs on March 6, 2009 "that the bank had frozen the Crescendo Account, and applied $1,100,000 from the account to pay down the $1,500,000 balance on the Crescendo Note," (Complaint at ¶ 36), and (ii) that "Spizizen continually attempted to contact National City agents, Stanley Szasna, Hope Landgraff, Richard Landgraff and Norman Lining, in order to demand the returns of the funds wrongfully converted by National City and to discuss [the] National

4

City Loans . . . ,"  but that "[s]uch efforts were of no avail," (*id.* at ¶ 37).  The complaint further alleges that these four individual Defendants "aided and abetted National City in wrongfully converting Plaintiffs' funds and securities," and that all of the individual and corporate Defendants "acted in concert to unlawfully exert dominion and control over Plaintiffs' funds and securities without any right or authorization to do so."  (*Id.* at ¶ 50-51.)  Based on these allegations, these individual Defendants are named as parties to Plaintiffs' Count I claim of conversion, but are not named in the remaining two counts of the complaint.

### III.  ANALYSIS

**A.     The Standards Governing the Parties' Motions**

As noted earlier, two motions presently are pending before the Court.  First, Plaintiffs ask that this case be remanded to state court, arguing that removal was improper in light of their assertion of viable conversion claims against the non-diverse individual Defendants.  As the removing parties, the two corporate Defendants, National City and PNC, bear the burden of establishing a basis for this Court's subject matter jurisdiction.  *See Gafford v. General Electric Co.,* 997 F.2d 150, 155 (6th Cir. 1993); *Young v. Bailey Corp.,* 913 F. Supp. 547, 550 (E.D. Mich. 1996).  More specifically, because these Defendants have appealed to the "fraudulent joinder" of the individual Defendants as the basis for removal, it is their burden to show "the absence of a 'reasonable basis for predicting that the state law might impose liability [on the individual Defendants] on the facts involved.'"  *Young,* 913 F. Supp. at 550 (quoting *Alexander v. Electronic Data*

5

*Systems Corp.,* 13 F.3d 940, 949 (6th Cir. 1994)). The issue of fraudulent joinder ordinarily is to be decided solely upon the allegations of Plaintiffs' complaint. *See Young,* 913 F. Supp. at 550.

Next, Defendants seek the dismissal of Counts I and III of Plaintiffs' complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin American Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007). Yet, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted). Rather, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at

1949.

### B.     Plaintiffs' Claim of Conversion Is Subject to Dismissal.

As explained, the removal of this case to this Court hinges upon the viability of Plaintiffs' Count I claim of conversion against the individual Defendants.[3]  In support of their motion for remand, Plaintiffs argue that Michigan law permits the imposition of personal liability upon corporate employees for their participation in torts committed by their corporate employer.  In response, and in support of their separate motion to dismiss, Defendants do not challenge this proposition, but instead argue more broadly that Plaintiffs have failed to state a viable conversion claim as to *any* Defendant, whether individual or corporate.  The Court agrees.

As one of the grounds for seeking dismissal of Plaintiffs' claim of conversion, Defendants appeal to the principle of Michigan law that a breach of a contractual obligation cannot support an action in tort absent the "violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Construction Corp. v. Michigan Bell Telephone Co.,* 454 Mich. 65, 559 N.W.2d 647, 658 (1997); *see also Scarff Brothers, Inc. v. Bischer Farms, Inc.,* 546 F. Supp.2d 473, 487 (E.D. Mich. 2008) ("Michigan does not permit recovery for a claim that sounds in contract under a tort theory.").  As the Michigan Supreme Court has explained, "if a relation exists which would give rise to a

---

[3]While it was not entirely clear from Plaintiffs' complaint whether they also meant to name the individual Defendants as parties to Count III of the complaint, Plaintiffs have since confirmed that the individual Defendants have been named only in Count I of the complaint. (*See* Plaintiffs' Motion for Remand at ¶¶ 1-2.)

legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." *Hart v. Ludwig,* 347 Mich. 559, 79 N.W.2d 895, 898 (1956) (internal quotation marks and citation omitted).

The courts have applied a variant of this principle in the specific context of claims of conversion brought by a depositor against a bank. In *Citizens Insurance Co. of America v. Delcamp Truck Center, Inc.,* 178 Mich. App. 570, 444 N.W.2d 210, 213 (1989), the Michigan Court of Appeals held that to sustain a claim of conversion, "[t]he defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship." Yet, as the Court of Appeals observed in a subsequent case, the Michigan Supreme Court has "noted that a debtor-creditor relationship arises between a bank and its depositor." *Comerica Bank v. Allied Communications, Inc.,* No. 185571, 1997 WL 33353282, at *2 (Mich. Ct. App. Mar. 14, 1997) (citing *Riverview Cooperative, Inc. v. First National Bank & Trust Co.,* 417 Mich. 307, 337 N.W.2d 225, 229-30 (1983)). Accordingly, the court in *Comerica Bank* held that the plaintiff/counter-defendant bank could not be held liable for a claim of conversion arising from its allegedly improper setoff of funds from the defendant/counter-plaintiff's bank account to pay down a debt owed to the bank, where the defendant depositor had "consented to the creation of a debtor-creditor relationship" by depositing money with the bank. *Comerica Bank,* 1997 WL 33353282, at *2; *see also Riverview Cooperative,* 337 N.W.2d at 231 (explaining that the plaintiff in that case could pursue a breach-of-contract claim, and not a tort claim, against the defendant bank for wrongfully honoring checks drawn upon the

plaintiff's account by someone not authorized to do so).

Courts in other jurisdictions have reached the same result under similar circumstances. In *Tevdorachvili v. Chase Manhattan Bank,* 103 F. Supp.2d 632, 643 (E.D.N.Y. 2000), for example, the court held that the plaintiff could not pursue a claim of conversion arising from the defendant bank's authorization of allegedly improper wire transfers from the plaintiff's checking account. In so ruling, the court explained that "the relationship between a bank and a depositor is the strictly contractual one of debtor and creditor," so that any claim against the defendant bank arising from the misappropriation of funds from the plaintiff's account necessarily would rest upon the bank's "contractual[] indebted[ness] to the [plaintiff] depositor in the amount of the funds deposited." *Tevdorachvili,* 103 F. Supp.2d at 643; *see also Crocker-Citizens National Bank v. Control Metals Corp.,* 566 F.2d 631, 637 (9th Cir. 1977) (holding that because money deposited into a bank account "becomes the literal property of the bank" subject to a debtor/creditor relationship, the deposited funds "cannot be tortiously converted by the bank"); *Newbro v. Freed,* 409 F. Supp.2d 386, 396 (S.D.N.Y. 2006) ("Ordinarily, when the bank has misused the depositor's money, the depositor's remedy lies in contract — not tort."); *Mijatovich v. Columbia Savings & Loan Association,* 522 N.E.2d 728, 730-31 (Ill. App. Ct. 1988) (holding that the plaintiffs were limited to breach-of-contract remedies for their claim that the defendant bank had misappropriated funds from their savings account,

where "the relationship of the parties was that of a creditor and debtor").[4]

Under this case law, it is clear that Plaintiffs may not pursue a claim of conversion against the Defendant bank, but instead must seek contractual relief from any misappropriation of funds from their National City accounts. As explained by the Michigan courts, Plaintiffs' deposits into the Crescendo and Trust Accounts gave rise to a debtor/creditor relationship, and National City was obligated to act in accordance with the contractual terms governing these deposits. *See Riverview Cooperative,* 337 N.W.2d at 230-31. Moreover, by making deposits into these accounts, Plaintiffs consented to the establishment of a debtor/creditor relationship, and thereby surrendered any possible claim of conversion. *See Citizens Insurance,* 444 N.W.2d at 213. Because National City owes Plaintiffs no duty apart from the contractual obligations owed to a depositor,

---

[4]In *Tevdorachvili,* 103 F. Supp.2d at 643, the court's ruling rested in part upon the requirement that the defendant must have converted "a specific, identifiable fund" to its own use. Defendants here advance a similar argument in support of their challenge to Plaintiffs' claim of conversion, citing Michigan court decisions requiring that the defendant be under an obligation "to return the specific money entrusted to his care." *Citizens Insurance,* 444 N.W.2d at 213; *see also Check Reporting Services, Inc. v. Michigan National Bank-Lansing,* 191 Mich. App. 614, 478 N.W.2d 893, 900 (1991) ("An action for the conversion of bank account funds . . . can be maintained only if there was an obligation on the defendant's part to return or deliver the specific money entrusted to it.").

As noted by Defendants, Plaintiffs' complaint lacks any allegations that National City seized or misappropriated any specific, identifiable funds from either the Crescendo Account or the Spizizen Trust Account. Yet, as to the latter account, at least, the complaint does allege that this account held over $1.8 million in securities, rather than simple money deposits, and that National City has refused Plaintiffs' demand to return the securities in this account. The above-cited case law, while seemingly applicable to the Crescendo Account, would not necessarily carry over to the securities in the Trust Account, and Defendants have not cited any authority that would suggest that the Court may disregard this distinction between the two accounts. Accordingly, the Court declines to decide Defendants' motion on this ground.

Plaintiffs cannot pursue a tort-based theory of recovery, but are limited to their contractual remedies.

Plaintiffs challenge this result on two grounds, neither of which is persuasive. First, they note that they are permitted to plead two theories of recovery in the alternative, even if these theories are inconsistent. *See Detroit Tigers, Inc. v. Ignite Sports Media, LLC,* 203 F. Supp.2d 789, 793 (E.D. Mich. 2002) (citing Fed. R. Civ. P. 8(d)(2)-(3)). Yet, the defect in Plaintiffs' claim of conversion is not that it is ***inconsistent*** with the breach-of-contract theories pursued elsewhere in Plaintiffs' complaint, but that it is not ***viable*** under Michigan law. It is clear under Michigan law that Plaintiffs and National City have a contractual relationship by virtue of Plaintiffs' deposits into accounts at the bank, and this contractual relationship precludes Plaintiffs from bringing tort claims arising from National City's alleged breach of obligations owed to its depositors.

Next, Plaintiffs contend that their tort and breach of contract claims rest upon National City's two distinct roles under the allegations of the complaint, and the two distinct sets of duties attendant to these roles. In Plaintiffs' view, "National City's relation to the Plaintiffs was twofold: that of a bank holding funds in trust; and that of a lender pursuant to the National City Loan contracts." (Plaintiffs' Response Br. at 10.) Plaintiffs recognize that the latter of these relationships is contractual in nature — and, indeed, the breach of contract claim in Count II of the complaint rests upon National City's alleged breach of the contractual obligations it owed as lender — but they insist that National City's breach of its separate duty to "hold[] funds in trust" gives rise to a

claim of conversion. As explained, however, the Michigan courts have held that the duties owed by a bank to its depositors are contractual in nature. Thus, any breaches of these duties are the proper subject of a breach of contract claim, and not a claim of conversion.

**C.     Plaintiffs Cannot Pursue a Separate Claim Based on National City's Alleged Breach of an Implied Covenant of Good Faith and Fair Dealing.**

In Count III of their complaint, Plaintiffs allege that National City breached an implied covenant in the parties' loan agreements to act in good faith and fairness when it exercises its discretionary right to accelerate payment of the National City Loans. Defendants seek the dismissal of this count, arguing that Michigan law does not recognize a separate cause of action for breach of an implied covenant of good faith and fair dealing. The Court agrees.

As Defendants point out, the Court recently reached precisely this conclusion, holding that there is "no independent cause of action" under Michigan law for breach of an implied covenant of good faith and fair dealing. *Metropolitan Alloys Corp. v. Considar Metal Marketing, Inc.,* No. 06-12667, 2007 WL 2874005, at *10 (E.D. Mich. Sept. 25, 2007). Rather, the Court found that the plaintiff's appeal to this implied covenant could, at best, lend further support to the breach of contract claim asserted elsewhere in its complaint. *Metropolitan Alloys,* 2007 WL 2874005, at *10. Likewise, in this case, Plaintiffs may seek leave to amend their existing breach of contract claim in Count II of their complaint to "incorporate allegations of [National City's] lack of good

faith performance of its contractual obligations," *id.*, but they may not pursue a separate claim arising from National City's alleged failure to exercise its contractual rights in good faith and with fairness. Consequently, Count III of the complaint must be dismissed.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' May 11, 2009 motion to dismiss Counts I and III of Plaintiffs' complaint (docket #2) is GRANTED. IT IS FURTHER ORDERED that Plaintiffs' May 28, 2009 motion for remand (docket #4) is DENIED.

        s/Gerald E. Rosen
        Chief Judge, United States District Court

Dated: November 10, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 10, 2009, by electronic and/or ordinary mail.

        s/Ruth Brissaud
        Case Manager