**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

NEIL SPIZIZEN, Individually,
NEIL SPIZIZEN REVOCABLE LIVING
TRUST, U/A/D 7/3/86, and
CRESCENDO HOMES, INC.,

        Plaintiffs,

                                Case No. 09-11713

v.                                 Hon. Gerald E. Rosen

NATIONAL CITY CORPORATION, *et al.,*

        Defendants.
_____/

**OPINION AND ORDER REGARDING**
**CROSS MOTIONS FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on_____April 13, 2011_____

PRESENT:  Honorable Gerald E. Rosen
                   Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiffs/Counter-Defendants Neil Spizizen, Neil Spizizen Revocable Living

Trust, and Crescendo Homes, Inc. brought this breach of contract suit on April 3, 2009 in

state court, claiming Defendants National City Corporation, PNC Financial Services

Group, Inc., and several National City employees unilaterally seized funds and securities

and applied such funds and securities against Plaintiffs' National City loans without any

basis for doing so.  Defendants/Counter-Plaintiffs National City and PNC removed the

case to this Court on May 5, 2009, citing diversity of citizenship as between Plaintiffs and the two corporate Defendants.  On November 10, 2009, the Court entered an opinion and order [Dkt. #11] dismissing Counts I and III of Plaintiffs' complaint for conversion and breach of implied covenant of good faith and fair dealing leaving only Count II, Plaintiffs' breach of contract claim.  The November 10, 2009 order additionally denied Plaintiffs' motion to remand.  Defendants filed a counterclaim on March 15, 2010, alleging five counts of breach of contract against Plaintiffs for failure to make payments on five loan obligations and one count seeking declaratory relief that Defendants have a right to hold and foreclose on Plaintiffs' trust account assets.[1]

On July 30, 2010, each party moved for summary judgment, and the two motions are presently pending before the Court.  The only remaining issue from Plaintiffs' motion for partial summary judgment is the breach of contract claim with respect to assets held in Plaintiffs' trust account in excess of Plaintiffs' purported collective obligations to Defendants.  Defendants have moved for summary judgment on Plaintiffs' entire breach of contract claim and all counterclaims.

Each of these two motions has been fully briefed by the parties.  Having reviewed the parties' written submissions in support of and opposition to these motions, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal

---

[1]  The Court dismissed Counts III and VI of Defendants' counterclaim in its August 10, 2010 stipulated order of dismissal.  These counts related to Plaintiff Spizizen's University Park and yacht loans, which the parties agree have been fully paid.

issues are sufficiently presented in these materials, and that oral argument would not assist in the resolution of these motions.  Accordingly, the Court will decide the parties' motions "on the briefs."  *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.  The Court's opinion and order is set forth below.

## II.  FACTUAL BACKGROUND

Plaintiffs Neil Spizizen and Crescendo Homes, Inc., a real estate development company owned and operated by Spizizen and others, have had a longstanding relationship with Defendant National City Corporation, and these parties have been involved in a series of loan transactions for the purchase and development of various Michigan properties.  On December 29, 2004, Plaintiff Spizizen obtained a private portfolio line of credit from Defendants in the principal amount of $2.4M (the "Private Portfolio Note").  On the same date, the parties signed a security agreement granting Defendants a specific security interest in Plaintiff Spizizen's 5,000,000 shares of Armada Tax Exempt Money Market securities located in investment account number 56-M19737002 (the "Trust Account").  Per the terms of the Private Portfolio Note, the $2.4M became due and payable in full on December 29, 2009.  As of June 30, 2010, the Private Portfolio Note had an outstanding balance of $630,355.27.

On March 3, 2006, Oakland Pointe Partners, II, LLC executed a promissory note in favor of Defendants in the principal amount of $1.2M (the "OPP Note").  Plaintiff Spizizen guaranteed fifteen percent of the OPP Note balance or $180,000, whichever was less.  The OPP Note required annual principal payments in the amount of $300,000.  In

3

2008, Plaintiff Spizizen failed to make the annual principal payment by December 30, 2008, sending the OPP Note into a default status.  As of June 30, 2010, the OPP Note had an outstanding balance of $811,466.67 of which Plaintiff owed fifteen percent, equaling $121,720.00.

Plaintiff Crescendo maintained a checking account (# 308014083) (the "Crescendo Account") with Defendants.  On February 13, 2007, Plaintiff Crescendo obtained a commercial note, demand line of credit, in favor of Defendants in the amount of $1.5M (the "Crescendo Note").  Additionally on February 13, 2007, Plaintiffs executed a separate Guaranty of All Debt, which guaranteed prompt payment of every one of Plaintiffs' obligations to Defendants when due.  Defendants mailed a letter, dated March 3, 2009 and postmarked March 4, 2009, to Plaintiffs demanding payment in full of the principal balance plus interest of the Crescendo Note.  Defendants also successfully faxed a copy of this letter to Plaintiffs at 2:48 pm on March 3, 2009.  On March 5, 2009, Plaintiff Spizizen requested to transfer the Trust Account from Defendants to UBS Financial Services.  Defendants did not transfer the Trust Account and responded to Plaintiffs with a telefax dated March 6, 2009, stating they had placed a hold on the Crescendo Account and applied $1.1M from the Crescendo Account to the Crescendo Note debt.  The $1.1M payment left essentially no funds remaining in the Crescendo Account.  As of June 30, 2010, the Plaintiff Spizizen's Trust Account had a balance of $1,938,201.42, the Crescendo Note had an outstanding balance of $404,251.63, and Plaintiffs' total outstanding balance to Defendants for the Private Portfolio note, OPP

4

Note, and Crescendo Note equaled $1,156,326.90.

## III.  ANALYSIS

### A.      Standards Governing the Parties' Motions

Through their present cross-motions, both parties seek summary judgment in their favor on Plaintiffs' breach of contract claim.  Additionally, Defendants seek summary judgment on all their counterclaims for breach of contract for Plaintiffs' failure to pay their loan obligations and for Defendants' right to hold and foreclose on Plaintiffs' Trust Account.

Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[2]  As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

---

[2]  On December 1, 2010 a new version of Fed. R. Civ. P. 56 took effect.  Due to the parties' submission of summary judgment motions prior to the effective date, the Court's opinion and order is decided under and cites the old rule.

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must-by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks and citation omitted). In addition, a party seeking summary judgment on issues as to which he bears the burden of proof, must make a showing "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis omitted).

## B.   Defendants' Security Interest in the Trust Account and Right to Setoff

Plaintiffs have moved for summary judgment on the narrow issue of assets held in the Trust Account in excess of Plaintiffs' total debt to Defendants. Because the Trust Account has a balance of $1,938,201.42, and Plaintiffs' total outstanding debt equals $1,156,326.90, Defendants are holding $781,874.52 in excess of Plaintiffs' total debt. Plaintiffs contend that the Trust Account Security Agreement does not give Defendants the right to indefinitely hold the collateral, and Defendants must dispose of the collateral

6

and return any surplus proceeds to Plaintiffs.  Plaintiffs further argue that none of the relevant agreements grant Defendants the right to hold collateral in excess of Plaintiffs total debt, and therefore, there is no genuine issue of material fact that Defendants are wrongfully holding Plaintiffs' assets in excess of Plaintiffs' debt.

Plaintiffs do not dispute that Defendants have a security interest in the Trust Account or that Defendants have a right to setoff in the event of default.  The only issues for the Court to decide are whether Defendants have a right to hold assets valued more than the total debt, and whether Defendants *must* timely exercise their right to setoff and return the collateral in excess of debt to Plaintiffs.

Defendants do not dispute any of Plaintiffs' June 30, 2010 figures.  Rather, Defendants argue that the Trust Security Agreement *does* allow them to hold collateral in excess of Plaintiffs' debt and *does* give them the right to indefinitely hold the collateral until the debt is paid in full.  In support of this argument, Defendants claim the Trust Security Agreement contains no language limiting the value of collateral or requiring that the amount of collateral held be reduced in the event of partial payment.  Defendants additionally argue that the Trust Security Agreement specifically allows them to hold the collateral indefinitely without any requirement to dispose and apply the collateral to setoff the debt.  The Court finds merit in Defendants' argument.

The Trust Security Agreement granted Defendants a specific security interest in Plaintiff Spizizen's 5,000,000 shares of Armada Tax Exempt Money Market securities located in investment account number 56-M19737002 (the "Trust Account").  (Pls.' Mot.

7

for Summ. J. Ex. 13 Section 1, Ex. A.) The security interest extends to "any and all replacements and substitutions therefore and . . . all cash and noncash proceeds of all or any part of the property hereinbefore described." (*Id.*)  The language of the agreement grants a specific security interest in these account assets without any reference to the value of the assets.  (*Id.*)  Once Plaintiff failed to pay the Private Portfolio note in full, Defendants had a right under the UCC to take possession of the secured assets in the Trust Account.  Mich. Comp. Laws §§ 440.9609(1)(a).  Additionally, Defendants' Business Account Agreement granted Defendants the right to "refuse further deposits or withdrawals . . . decline to process any transaction, terminate electronic access to the Account . . . with or without cause and without prior notice to [Plaintiffs]."  (Defs.' Mot. for Summ. J. Ex. 19, at 11.)  Plaintiffs fail to draw the Court's attention to any language in the agreement, the UCC, or any other authority which states that the value of collateral administratively held or seized by a creditor cannot exceed the value of debt.[3]  Therefore, Defendants' right to seize the collateral is not affected in any way by the value of the collateral.[4]

---

[3]  Once a creditor takes possession of collateral, it must proceed in a commercially reasonable manner to dispose of the collateral, and failure to do so grants the debtor a right to recovery.  Mich. Comp. Laws § 440.9610(1); *Michigan National Bank v. Marston,* 29 Mich. App. 99, 185 N.W.2d 47, 50 (1970) (holding that a debtor has a right to recovery if creditor's inaction results in injury to the debtor).  Plaintiffs have not, however, made any arguments claiming that Defendants have acted in a commercially unreasonable manner or that Plaintiffs have suffered injury from Defendants' decision not to exercise their right to setoff.

[4]  Plaintiffs additionally challenge whether or not the current assets in the Trust Account are indeed the original, replacements, substitutions, and/or proceeds of the original 5,000,000 Armada shares.  In reply, Defendants correctly refer the Court to the Trust Account statements

Regarding Defendant's right to setoff of Plaintiff's debt, the Trust Agreement provides that:

> Bank shall have the right in its sole discretion to enforce or attempt to enforce rights in respect to the Collateral by suit or otherwise, *but Bank shall have no duty to institute any suit or to take any other action to realize on the Collateral (or any security therefor)* or, having started any suit or attempt, to thereafter continue the same.

(Pls.' Mot. for Summ. J. Ex. 17 Section 5.1) (emphasis added).  Similarly, the next section of the agreement states that the "Bank *shall have the right to* sell or otherwise dispose of the Collateral or any part thereof or any interest therein at any time or from time to time." (*Id*. at Section 5.2) (emphasis added).  Both of these provisions clearly support Defendants' right to convert the Armada shares in the Trust Account into cash to satisfy Plaintiffs' debt, but neither provision *requires* Defendants to do so.[5]  Furthermore, Defendants are only required to return any unsold Armada shares or surplus from the sale of Armada shares to Plaintiff "[u]pon the payment in full and satisfaction . . ." of

---

over the past five years, which show that Plaintiffs made a single deposit of $5M in the Trust Account on December 14, 2004 to purchase the Armada shares, and no further deposits have ever been made to that account.  Therefore, there is no question of fact that the assets currently in the Trust Account are a result of the initial Armada shares purchase, and Defendants maintain a security interest in all those assets.

[5]  These provisions of the Trust Agreement additionally leave no issue of material fact for Count VIII of Defendants' counterclaim seeking declaratory relief for their right to hold and foreclose on the trust assets.  Therefore, summary judgment is appropriately granted in favor of Defendants on Count VIII of their counterclaim.  Once Defendants exercise their right to foreclose on the trust account assets pursuant to this order, they must return any surplus to Plaintiffs.  Mich. Comp. Laws § 440.9608(1)(d).

Plaintiffs' debt. (*Id.* at Section 6). Finally, the agreement grants Defendants "all other rights and remedies of a secured party under the UCC. (*Id.* at Section 5.4.)

The Uniform Commercial Code similarly grants Defendants the right to apply cash proceeds from the sale of collateral, but imposes no duty to do so. Mich. Comp. Laws §§ 440.9607(1), .9610(1) (stating "in the event of default, a secured party *may* do one of the following . . ." and "[a]fter default, a secured party *may* sell . . . the collateral . . . (emphasis added)).[6] *If* Defendants decide to dispose of the collateral, the same statutes require that such disposition be done in a commercially reasonable manner, and that any surplus be returned to Plaintiffs. *Id.* Plaintiffs cite no authority, and the Court is aware of none, requiring Defendants to take action and dispose of the collateral. Therefore, there are no genuine issues of material fact that Defendant may hold the Trust Account assets regardless of the Armada shares value, and that Defendant has a right to apply the proceeds of the Armada shares to Plaintiffs' debt but is not required to do so. For the above reasons, summary judgment is appropriately granted in favor of Defendants on the issues related to Defendant's security interest in the Trust Account.

**B.      Defendants' Breach of Contract Counterclaims**

---

[6] Plaintiffs selectively quote portions of MCL § 440.9608(1)(a), which uses the word "shall", to support their argument. The entire statutory section reads "[a] secured party shall apply or pay over for application the cash proceeds of collection or enforcement under section 9607 *in the following order* to:", which indicates the word "shall" only pertains to the particular order a creditor must follow in applying the collateral to certain payments. MCL 440.9608(1)(a) (emphasis added). The statute does not mandate the application itself of collateral.

Counts I, II, IV, and V of Defendants' counterclaim seek money judgments against Plaintiffs for the $404,251.63 balance due on the Crescendo Note, $121,720.00 balance due on the OPP Note, and $630,355.27 balance due on the Private Portfolio Note based on Plaintiffs' default on each of these obligations. Michigan courts have been consistent in holding that, under the UCC, banks may seek money judgments against a debtor in default while simultaneously pursuing other remedies, such as foreclosing on collateral. *Center Capital Corp. v. Marlin Air, Inc.,* No. 07-15128, 2008 WL 937491, at *5-*6 (E.D. Mich. Apr. 7, 2008); *Michigan Nat. Bank v. Marston*, 29 Mich.App. 99, 185 N.W.2d 47 (1971). Plaintiffs do not dispute that they are presently in default on these obligations, but rather argue that material issues of fact exist as to whether Defendants are entitled to enforce the loan agreements based on Defendants' prior material breach, the doctrines of estoppel and unclean hands, and the offset Plaintiffs are entitled to receive as a result of Defendants' seizure and application of collateral. As explained below, the Court does not find merit in Plaintiffs' argument.

Plaintiffs' argument relies on the allegations that Defendants do not have a right to hold assets in the Trust Account and that Plaintiffs' Crescendo Note was improperly offset by Defendants. Earlier in this opinion, the Court ruled in favor of Defendants on the right to hold the Trust Account assets, and therefore, only the issue of Defendants' offset of the Crescendo Note remains.

Plaintiffs cite the analysis of the common law right to setoff under *Hansman* in arguing that Defendants did not sufficiently demonstrate that the funds used to offset the

11

Crescendo Note were the property of the correct debtor, which in Plaintiffs' view is

Crescendo.  *Hansman v. Imlay City State Bank*, 121 Mich. App. 424, 430-31; 328 N.W.2d

653, 656 (1982).  Defendants have correctly brought the Court's attention to the fact that

Defendants' right to offset should not be analyzed strictly under the common law and

*Hansman*, but rather under the plain language of the Deposit Account Agreement.

*Frankenmuth Mut. Ins. Co. V. Masters*, 460 Mich. 105, 111, 595 N.W.2d 832 (1999);

*Ferro Corp. v. Cookson Group, PLC*, 585 F.3d 946, 950 (6th Cir. 2009) (holding that

when the terms of a contract are clear and unambiguous, a Court need only look to the

plain language of the agreement to determine the rights and obligations of a party).

Under the section on Defendants' right to offset, the Deposit Account Agreement

provides:

> Bank has the right to offset against the Account and against all deposits and
> interest thereon (*whether such deposits are general or special, including
> without limitation deposits held jointly or by the entireties*) which are at any
> time maintained by Depositor with Bank or with any of its affiliates for any
> indebtedness owed by Depositor to Bank. . . . The rights of Bank, or any of
> its affiliates, shall be in addition to, and not exclusive of, any similar rights,
> including any setoff rights, by law or other contract.

(Defs.' Mot. for Summ. J. Ex. 19, at 9) (emphasis added).  The language of the agreement

expressly grants Defendants the right to offset the Crescendo Account.  Because the

language of the agreement grants Defendants an unrestricted right to offset against both

general and specific accounts without regard to ownership, Plaintiffs' argument that

Spizien, not Crescendo, owned the Crescendo Account funds is irrelevant.  Plaintiffs fail

12

to even address the agreement language covering offset, and therefore, fail to raise any issue of fact regarding its interpretation.

Finally, Plaintiffs claim that Defendants unlawfully exercised their right to setoff the Crescendo account, because only $3,456.27 in interest for the Crescendo Note was mature on or before March 3, 2009, and Defendants had not made a demand for full payment of the principal and interest balance by that date.[7]  It is clear law and undisputed that banks have a right to use account funds as a setoff against mature obligations. *Hansman*, 328 N.W.2d at 655.  The Crescendo Note is a demand note without any default language or fixed date of repayment, and therefore, it is fully payable and matures immediately upon demand.  *Jackson v. Estate of Green*, 484 Mich 209, 215, 771 N.W.2d 675, 678 (2009).

It is undisputed that Defendant's March 3, 2009 letter, which was sent to Plaintiffs via fax on March 3rd and postmarked March 4th, qualified as an appropriate demand and made the full amount of the Crescendo Note mature and eligible for setoff.  Defendants subsequent March 6, 2009 fax to Plaintiffs represents that the actual setoff did not occur until March 6, and Plaintiffs do not allege that the *setoff* – not the *hold* on the Crescendo Account– occurred any sooner.[8]  Because Plaintiffs do not raise any issues of fact alleging

---

[7]  Plaintiffs' also allege that the OPP Note was not mature when the Crescendo Note was offset by Defendants.  Because Defendants did not apply any of the $1.1M offset from the Crescendo Account to the OPP Note, the status of the OPP Note at the time of offset is irrelevant to the Court's analysis.

[8]  Plaintiffs additionally challenge the hold Defendants put on the Crescendo Account as of March 3, 2009.  The Court finds that the cited authority on setoff rights, which has already

13

that the offset occurred prior to receiving Defendants' demand letter and the full amount of

the Crescendo Note becoming mature, summary judgment is appropriately granted in favor

of Defendants on this issue.

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' July 30, 2010

motion for partial summary judgment [Dkt. #34] is DENIED and Defendants' July 30,

2010 motion for summary judgment [Dkt. #37] is GRANTED.

IT IS FURTHER ORDERED that Defendants shall submit a proposed judgment

order with the stipulation of Plaintiffs within 30 days of this order.


s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated: April 13, 2011

---

been discussed, is inapplicable to Defendants' actions as of March 3, 2009.  Defendants' right to
place an administrative hold on the Crescendo Account is not governed by the law regarding
setoff rights, but rather, explicitly governed by the Deposit Account Agreement, which allows
Defendants to "decline to process any transaction . . . *with or without cause and without prior
notice to Depositor.*"  (Defs.' Mot. for Summ. J. Ex. 19, at 11) (emphasis added.)  Therefore,
there is no question of fact that Defendants' were fully within their contractual rights to freeze
the Crescendo Account on March 3, 2009, regardless of whether or not the full Crescendo Note
had matured.

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 14, 2011, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137