## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION


NEIL SPIZIZEN, et al.,

                        Plaintiffs,                No. 09-cv-11713
                                                    Hon. Gerald E. Rosen
v.


NATIONAL CITY CORPORATION, et al.,

                        Defendants.
_____/

## OPINION AND ORDER REGARDING DEFENDANT'S MOTIONS
## FOR ENTRY OF JUDGMENT AND FOR ATTORNEY FEES

### I. INTRODUCTION

This case centers on a series of debt obligations between the parties. On April 14, 2011 this Court entered an order denying Plaintiffs' motion for partial summary judgment and granting Defendants' motion for summary judgment. The Court instructed Defendants to submit a proposed judgment. On May 16, 2011 Defendants submitted a motion for entry of judgment and a motion for attorney fees. Plaintiffs responded with their objections on May 27, 2011. Having reviewed the briefs and supporting exhibits, as well as the record as a whole, the Court finds that the pertinent arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of these motions. Accordingly, the Court will decide both motions "on the briefs." See L.R. 7.1(f)(2). The Court's opinion and judgment is set forth below.

## II. FACTUAL BACKGROUND

Plaintiffs Neil Spizizen ("Spizizen") and Crescendo Homes, Inc. ("Crescendo"), a real estate development company owned and operated by Spizizen and others, have had a longstanding relationship with Defendants. The parties have been involved in a series of loan transactions for the purchase and development of various Michigan properties. On December 29, 2004, Spizizen obtained a private portfolio line of credit from Defendants in the principal amount of $2.4M (the "Private Portfolio Note"). On the same date, the parties signed a security agreement granting Defendants a specific security interest in Spizizen's 5,000,000 shares of Armada Tax Exempt Money Market securities. Per the terms of the Private Portfolio Note, the $2.4M became due and payable in full on December 29, 2009. As of June 30, 2010, the Private Portfolio Note had an outstanding balance of $630,355.27.

On March 3, 2006, Oakland Pointe Partners, II, LLC executed a promissory note in favor of Defendants in the principal amount of $1.2M (the "OPP Note"). Spizizen guaranteed fifteen percent of the OPP Note balance or $180,000, whichever was less (the "OPP Note guaranty"). The OPP Note required annual principal payments in the amount of $300,000. Spizizen failed to make the annual principal payment for 2008, sending the OPP Note into default. As of June 30, 2010, the OPP Note had an outstanding balance of $811,466.67 of which Plaintiff owed fifteen percent, totaling $121,720.00.

Crescendo maintained a checking account with Defendants. On February 13, 2007, Crescendo obtained a commercial note, demand line of credit, in favor of

2

Defendants in the amount of $1.5M (the "Crescendo Note"). Additionally, on February 13, 2007, Plaintiffs executed a separate Guaranty of All Debt, which guaranteed prompt payment for each of Plaintiffs' obligations to Defendants. Defendants mailed a letter to Plaintiffs -- dated March 3, 2009 and postmarked March 4, 2009 -- demanding payment in full for the Crescendo Note. On March 5, 2009, Spizizen attempted to transfer the Trust Account from Defendants to UBS Financial Services. Defendants denied the transfer, stating that they had placed a hold on the Crescendo Account and applied $1.1M from the Crescendo Account to the Crescendo Note debt. The $1.1M payment left essentially no funds remaining in the Crescendo Account. Plaintiffs filed their complaint on April 3, 2009. Defendants removed the case to this Court on May 5, 2009.

A series of motions ensued. On April 14, 2011, the Court denied Plaintiffs' motion for partial summary judgment and granted Defendants' motion for summary judgment, holding that Plaintiffs had breached their contracts with Defendants. Accordingly, Defendants submitted a motion for judgment, a proposed judgment, and a motion for attorney fees. Plaintiffs objected on numerous grounds. The following opinion and judgment addresses Plaintiffs' objections and sets forth the Court's judgment.

### III. ANALYSIS

The Court having granted Defendants' motion for summary judgment, all that remains is entry of judgment. Defendants filed a motion for judgment, a motion for attorney fees, and a proposed judgment that reflects Plaintiffs' liability on the Private

3

Portfolio Note, the OPP Note guaranty, and the Crescendo Note, as well as the fees accrued by Defendants' attorneys.  Defendants seek $1,314,443.87 in total: $631,511.11 on the Private Portfolio Note; $121,940.00 on the OPP Note guaranty; $405,569.26 on the Crescendo Note; and $155,423.50 in attorney fees.  Plaintiffs have proffered a number of objections to Defendants' proposed judgment.  The following analysis addresses Plaintiffs' objections.

**A.      Plaintiffs' Objections to Late Fees**

In addition to the amounts of principal and interest owed by Plaintiffs, Defendants have requested $4,061.82 in late fees that accumulated prior to Plaintiffs' default. Plaintiffs object to the inclusion of late fees, arguing that Defendants failed to provide information regarding the fees during the course of discovery and going so far as to suggest sanctions are warranted.  (Pls.' Resp. to Defs.' Mot. for J. 2.)  Specifically, Plaintiffs claim that they received no documentation prior to April 14, 2011 regarding the late fees claimed.  (*Id.* at 3.)  This statement is patently false.  A cursory examination of the record reveals that Exhibit 9 accompanying Defendants' motion of summary judgment [Dkt. #37] consists of account statements detailing the late fees contested by Plaintiffs.  The document itself is forty-one pages long, and includes entries for late fees on pages twelve through forty-one.  Notwithstanding the fact that these account statements were likely in Plaintiffs' possession from the outset of this case, Defendants filed their motion for summary judgment on July 30, 2010.

4

In the alternative, Plaintiffs also dispute a specific late fee of $449.38 levied on December 14, 2007. The parties agree that the applicable provision provides for a ten day grace period before a late fee may be assessed and that payment was due on December 3; however, the parties dispute whether the grace period expired on December 13 or December 14. If the grace period expired on December 14, then the late fee was not justified.

The relevant loan provision states that "if any interest on this Note is not paid within (10) days after the due date of that interest, then, and in each such case, Bank shall have the right to assess a late charge." (Defs.' Mot. for J. Ex. 4.) Plaintiffs emphasize the word "after" without explaining how the grace period lasted until December 14. It seems, instead, that the important word in the language quoted above is "within," since payment had to be made <u>within</u> the grace period to avoid a late fee. That is, after payment was due on December 3, Plaintiffs had ten days to make their payment and avoid a late fee; that period began on December 4. Since Plaintiffs had "ten days after the due date" to make payment, a ten day period beginning on December 4 ends on December 13. The note specifically states that the payment must be made "<u>within</u> (10) days after the due date" and thus Plaintiffs had until the end of December 13 to avoid a late fee. A payment occurring on December 14 cannot be characterized as "within" the ten day period. Therefore, Plaintiffs' objections to Defendants' late fees are without merit.

5

**B.      Plaintiffs' Alleged Settlement of Claims**

Plaintiffs also claim that liability should be reduced on the basis of a settlement purportedly agreed to before the Court issued its opinion and order on the parties' cross-motions for summary judgment.  According to Plaintiffs, the parties were engaged in settlement talks and reached an agreement to settle Plaintiffs' claims prior to the Court's opinion and order granting Defendants' motion for summary judgment.  The Court finds no merit to Plaintiffs' argument.  Plaintiffs have not produced the text of the alleged agreement, let alone a copy signed by the parties.  Further, Plaintiffs have failed to even articulate the terms of the supposed settlement to the Court.  Rather, as explained below, the single piece of evidence put forth by Plaintiffs instead demonstrates that the parties had not yet reached an agreement.

Contract formation requires a meeting of the minds on all essential terms. *Burkhardt v. Bailey*, 680 N.W.2d 453, 463 (Mich. Ct. App. 2004).  "A meeting of the minds is judged by an objective standard, considering the express words of the parties and their visible acts rather than their subjective states of mind." *Oceguera v. Seaway Cmty. Bank*, No. 298174, 2011 WL 3115786, at *2 (Mich. Ct. App. July 26, 2011) (citing *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006)).  The email offered by Plaintiffs as evidence of a settlement -- an email from Plaintiffs' attorney, Jeffrey M. Thompson -- objectively demonstrates that the parties had not agreed on a settlement of claims.

6

In the email, Thompson suggested two modifications to what was apparently a preliminary settlement agreement between the parties, but Thompson's own words explicitly show that no agreement had been reached. After describing his proposed changes, Thompson asked Defendants' attorneys to "circulate a final version of the release . . . to review in advance of execution." (Pls.' Resp. to Defs.' Mot. for J. Ex. 6.) Clearly, Thompson did not believe that a binding agreement had been entered into, otherwise there would be no need to review a final draft of the agreement prior to executing it. A contract requires an objectively verifiable meeting of the minds. *Oceguera v. Seaway Cmty. Bank*, No. 298174, 2011 WL 3115786, at *2 (Mich. Ct. App. July 26, 2011) (citing *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006)). Here, Thompson's outward conduct unequivocally shows that no meeting of the minds had occurred because Thompson contemplated further review before executing the settlement. As such, Plaintiffs' argument fails.

## C.   Plaintiffs' Request for Interest on Amounts to be Returned

As the Court discussed in its prior opinion, Defendants will be required to return to Plaintiffs any funds that are not used to satisfy the debts at issue. On the basis of this prospective recoupment, Plaintiffs contend that a judgment exists in their favor and seek pre- and post-judgment interest on any funds that will be recovered from Defendants because, according to Plaintiffs, "even the judgment proposed by [Defendants] is a money judgment in favor of Plaintiffs . . . ." (Pls. Resp. to Defs.' Mot. for J. 7.) However, this statement is false. "The 'substance' of a money judgment is a compelled

7

transfer of money[,]" and the Court is not compelling Defendants to transfer a specific sum of money to Plaintiffs. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 216 (2002). *See also Matter of Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1186 (5th Cir. 1986) (stating that a money judgment requires (1) specific identification of parties and (2) a definite and certain amount owed by one party to another). Since the Court granted summary judgment in Defendants' favor, any judgment will in fact be a money judgment in favor of Defendants.

The fact that Defendants will return funds not used to satisfy Plaintiffs' debts does not convert the judgment into one that is in Plaintiffs' favor. Plaintiffs' money will be returned because Defendants will lose the power to withhold the funds once Plaintiffs' debts are satisfied. *See Spizizen v. Nat'l City Corp.*, No. 09-11713, 2011 WL 1429226, at *3-*4 (E.D. Mich. Apr. 14, 2011). Plaintiffs' recoupment is simply the inevitable consequence of the Court's judgment, rather than a judgment unto itself. As such, no money judgment in Plaintiffs' favor exists, and no interest is warranted.

**D.      Plaintiffs' Claim that Defendants Will Recover More than the Total Amount Due**

In addition to Plaintiffs' other objections, Spizizen contends that his liability under the OPP Note guaranty should be reduced to an amount below the fifteen percent to which he initially agreed. Specifically, Spizizen alleges that if Defendants recover fifteen percent of the OPP Note from him, then Defendants will ultimately receive more than the total amount owed by virtue of Defendants' settlements with other guarantors of the OPP Note. This claim is problematic because Spizizen cites no evidence and offers no

8

analysis in support of this claim.  Spizizen instead relies on conclusory statements alone.
That is, Spizizen has not offered any documentation regarding other guarantors'
settlement agreements, nor has Spizizen cited authority in support of his position.
Spizizen merely repeats his conclusion: that Defendants will recover more than the total
amount owed if they collect in full from Spizizen.  Furthermore, the amount Spizizen
claims to owe as guarantor -- $90,586.89 -- is based on the settlement agreement he
argued in favor of earlier.  The Court rejected this argument in Part B, *supra*.  The
language of Spizizen's guaranty agreement clearly states that Spizizen is obligated to pay
fifteen percent of the total owed on the OPP Note or $180,000, whichever is less.  As
such, Spizizen will be liable accordingly.

**E.      Plaintiffs' Request Regarding Commercially Reasonable Liquidation of
           Assets**

         In addition to voicing concerns with Defendants' proposed judgment, Plaintiffs
request that the Court's judgment include a mandate that Defendants liquidate Plaintiffs'
assets in a commercially reasonable manner.  The Court declines this invitation because
Defendants are already so required.  The Court made this clear in its earlier opinion and
order: "If Defendants decide to dispose of the collateral, the . . . statutes require that such
disposition be done in a commercially reasonable manner, and that any surplus be
returned to Plaintiffs."  *Spizizen v. Nat'l City Corp.*, No. 09-11713, 2011 WL 1429226, at
*4 (E.D. Mich. Apr. 14, 2011) (emphasis omitted).

**F.      Spizizen's Objections to the Award of Attorney Fees**

In addition to the debts owed, Defendants have also requested $155,423.50 in attorney fees and costs.   Spizizen contests this request on the following three grounds: (1) that the relevant indemnity provisions are too vague to provide attorney fees; (2) that Defendants acted unreasonably when they elected to withhold his funds prior to the instigation of this suit; and (3) that the $155,423.50 requested is unreasonable.  "Under the 'American rule,' attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed v. Reed*, 693 N.W.2d 825, 845 (Mich. Ct. App. 2005) (citations omitted).  Here, Defendants claim entitlement to attorney fees pursuant to contract.  "The purpose of contract interpretation is to enforce the parties' intent, and if the language of the document is unambiguous, interpretation is limited to the actual words used." *Comerica Bank v. Alkhafaji*, No. 268046, 2007 WL 1855048, at *2 (Mich. Ct. App. June 28, 2007). Clear contractual language is given its ordinary meaning.  *Id.*

At the outset, it appears that Spizizen is indeed liable for Defendants' attorney fees arising out of this litigation.  There are three obligations at issue -- the Private Portfolio Note, the Crescendo Note, and the OPP Note guaranty -- and each contains explicit language providing for attorney fees.  The Crescendo and Private Portfolio Notes, which Spizizen signed, each include an indemnity clause that reads as follows:

10

> Borrower will reimburse Bank, on Bank's demand from time
> to time, for any and all fees, costs, and expenses (including,
> without limitation, the fees and disbursements of outside legal
> counsel and the interdepartmental charges and/or salary of in-
> house counsel) incurred by Bank in administering this Note or
> in protecting, enforcing, or attempting to protect or enforce its
> rights under this Note.

(Pls.' Mot. for Partial Summ. J. Ex. 7 at 3; Ex. 9 at 2.)  Further, Spizizen's OPP Note

guaranty contains language stating that Spizizen would be liable for "all of Lender's

costs, expenses, and reasonable attorneys' fees incurred in connection with or related to

(A) the collection of the Indebtedness, (B) the collection and sale of any collateral for the

Indebtedness or this Guaranty, or (C) the enforcement of this Guaranty."  (Pls.' Mot. for

Partial Summ. J. Ex. 5 at 1.)  By providing for recoupment of "fees and disbursements of

outside legal counsel" and "reasonable attorneys' fees" in connection with the loans and

guaranty at issue, Spizizen's contracts unambiguously entitle Defendants to attorney fees

in connection with this case.  *Comerica Bank v. Alkhafaji*, No. 268046, 2007 WL

1855048, at *2 (Mich. Ct. App. June 28, 2007); *Reed v. Reed*, 693 N.W.2d 825, 845

(Mich. Ct. App. 2005).

Spizizen contests his liability for attorney fees by suggesting that the indemnity

provisions at issue are insufficiently specific because they do not explicitly reference

"attorney's fees" *per se*.  (Pls.' Resp. to Defs.' Mot. for Atty Fees 4.)  However,

Spizizen's position does not accurately reflect controlling law.  In fact, the relevant case

law only requires that indemnity provisions express the parties' intent to include attorney

fees; the magic phrase "attorney's fees" is not required.  For instance, in *Comerica*, the

11

court refused an award of attorney fees because the relevant contract provision merely provided for "any and all losses" arising out of the guaranty at issue. *Comerica Bank v. Alkhafaji*, No. 268046, 2007 WL 1855048, at *3 (Mich. Ct. App. June 28, 2007). The court did not require specific phrasing. Rather, the court denied attorney fees because the indemnity provision did not contain "language (such as 'of every character') indicating an intent that the language include attorney fees, costs, or other expenses." *Id.* No special language was required, only a sufficiently explicit expression of intent.

By contrast, in *Redfern v. R.E. Dailey Co.*, 379 N.W.2d 451, 456 (Mich. Ct. App. 1985), the court held that attorney fees <u>were</u> contemplated by an indemnity provision which agreed to reimbursement "against all claims, liabilities, losses, damages and expenses, of every character whatsoever . . . ." *Id*. This language expressed the parties' intent without using the specific language Spizizen claims is required. As these cases demonstrate, Spizizen's argument fails.

Spizizen further contests his liability for attorney fees based on Defendants' purportedly unreasonable decision to hold Spizizen's assets once he became delinquent on his obligations. (Pls.' Resp. to Defs.' Mot. for Atty Fees 6-7.) Aside from the fact that Defendants had the power to hold Spizizen's assets pursuant to the relevant agreements, *see Spizizen v. Nat'l City Corp.*, No. 09-11713, 2011 WL 1429226, at *3-*4 (E.D. Mich. Apr. 14, 2011), Spizizen fails to cite any authority whatsoever in support of his position. Furthermore, Spizizen decries that he was "deprived" of access to his assets "for more than two years" without appreciating that the two-year denial stems more from

12

his decision to file this lawsuit and the disputatious way in which the case was conducted, rather than any specific conduct on Defendants' part. Therefore, this argument lacks merit as well.

Finally, Spizizen claims that the amount requested by Defendants -- $155,423.50[1] -- is patently unreasonable in light of the proceedings in this case. The Court has discretion when awarding attorney fees, and "[f]ederal courts calculate awards of attorney fees using the lodestar method, which consists of 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Sykes v. Anderson*, 419 Fed. App'x 615, 617-18 (6th Cir. 2011). The amount produced by the lodestar method is presumptively reasonable, although the Court retains discretion to increase or reduce the amount for, *e.g.*, duplication of effort. *Ky. Rest. Concepts Inc. v. City of Louisville*, 117 Fed. App'x 415, 419 (6th Cir. 2004). "The appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007).

Spizizen contends that the rates and hours billed by Defendants' attorneys are unreasonably high. The following table shows -- for each member of Defendants' legal team -- years of experience, usual hourly rate, actual hourly rate in this case, hours billed, and amount charged:

---

[1] This correct amount, given Defendants' figures, should be $155,418.50. *See* note 2, *infra*.

13

| Years of Experience | Usual Hourly Rate | Actual Hourly Rate | Hours Billed | Total Amount |
|:---:|:---:|:---:|:---:|:---:|
| 25 | $265-$300 | $250 | 126.7 | $31,675.00 |
| 19 | $335-$350 | $250 | 254.8 | $63,700.00 |
| 16 | $310-$325 | $225 | 245.5 | $55,237.50 |
| 8 | $225 | $225 | 10.3 | $2,317.50 |
| 5 | $225 | $225 | 1.1 | $247.50 |
| Paralegal | $135 | $135 | 13.2 | $1,782.00 |
| Paralegal | $135 | $135 | 3.4 | $459.00 |
| **Total** | | | | **$155,418.50**[2] |

The billing rates for Defendants' attorneys are reasonable.[3]  Each attorney involved in this case has experience in the field, and the three attorneys who billed the vast majority of hours each substantially discounted their rates for this case, likely as the result of a

---

[2] It should be noted that this figure differs from Defendants' calculation by $5.00.  It appears that Defendants miscalculated the total charge for Mr. Bolton, one of Defendants' attorneys.  According to Defendants, Mr. Bolton billed 10.3 hours at $225 per hour.  Therefore, Mr. Bolton accrued $2,317.50 in fees.  Defendants' brief instead lists Mr. Bolton's total fees at $2,322.50.

[3] Defendants do not address the reasonableness of their paralegals' billing rate.  Nevertheless, the Court finds $135 per hour to be reasonable.  According to the Association of Legal Assistants and Paralegals, the average paralegal in the Great Lakes Region had a billing rate of $111 per hour in 2010.  *See* The Association of Legal Assistants and Paralegals, *2010 National Utilization and Compensation Survey Report*, Section 3 - Paralegal Billing Rates, *available at* http://www.nala.org/Upload/file/PDF-Files/10SEC3.pdf (last accessed Nov. 29, 2011).  However, the average billing rate for paralegals at a firm the size of Clark Hill (*i.e.*, more than 100 attorneys) is $152 per hour.  *Id.*  As such, a $135 per hour billable rate is reasonable.  Spizizen also contests whether paralegal fees can be included in an award of attorney fees.  The applicable case law suggests that paralegal fees are includable.  *See, e.g.*, *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008); *Grooms v. Comm'r of Social Sec.*, No. 08-14189, 2011 WL 4536886, at *5 (E.D. Mich. Sept. 30, 2011); *Niswonger v. PNC Bank Corp.*, No. 10-377, 2011 WL 4543929, at *4 (S.D. Ohio Sept. 29, 2011); *Brooks v. Whirlpool Corp.*, No. 10-01098, 2011 WL 3684774, at *5 (W.D. Tenn. Aug. 23, 2011).

specific arrangement with Defendants. (Defs.' Mot. for Atty Fees 5-7.) As the table shows, the three attorneys who billed the lion's share of hours in this case reduced their fees by substantial amounts.

Furthermore, these discounted hourly rates -- between $225 and $250 per hour -- do not significantly vary from the average rates for attorneys with similar amounts of experience.[4] The discounted rates are also well within the range of expected billable rates for a law firm the size of Clark Hill, as well as a law firm located in downtown Detroit. According to the State Bar of Michigan, the mean rate at a firm with more than fifty attorneys is $313 per hour, and the mean rate for a downtown Detroit law firm is $290 per hour. (Defs.' Mot. for Atty Fees Ex. 12 at 8-9.) Counsel's discounted rates are well below these amounts. As such, it appears that Defendants' attorneys billed their time at reasonable rates.

One last point is worth noting regarding billing rates: as the above table shows, an attorney with twenty-five years of experience billed at a lower rate than an attorney with nineteen years of experience. This difference reflects the attorneys' respective roles in this case -- the higher-billing attorney was the lead attorney on this case -- as well as the fact that the lower-billing attorney is senior counsel at Clark Hill whereas the latter, higher-billing attorney is a member of the firm. (Defs.' Mot. for Atty Fees 5-6.)

---

[4] In Michigan, an attorney with three to five years of experience has a billing rate of $189 per hour; an average attorney with six to ten years of experience has a billing rate of $205 per hour; an average attorney with eleven to fifteen years of experience has a billing rate of $232 per hour; and an average attorney with sixteen to twenty-five years of experience has a billing rate of $255 per hour. (Defs.' Mot. for Atty Fees Ex. 12 at 7.)

15

In addition to evaluating the hourly rates charged by counsel, the Court must also determine whether the number of hours billed is reasonable. Spizizen attempts to characterize this case as requiring a marginal amount of time and effort, claiming that Defendants should not recover full attorney fees because "[t]he proceedings in this case were minimal, and this case was completely resolved during the summary judgment stage." (Pls.' Resp. to Defs.' Mot. for Atty Fees 8.) However, this case has lasted over two years and has generated extensive motion practice, at least some of which was generated by Plaintiffs' hyper-zealous discovery tactics and other conduct. Defendants' attorneys also spent a significant amount of time considering forbearance agreements and engaging in settlement discussions. Nevertheless, as explained below, the Court deems it appropriate to partially reduce Defendants' attorney fees in light of duplication of effort and the dismissal of some of Defendants' counterclaims.

While the Court does not doubt that Defendants' lead attorney expended significant effort as "the ultimate decision maker on strategy, motions, discovery, and deposition practice[,]" the 254.8 hours billed is slightly excessive in light of the work done and time billed by Defendants' other attorneys. (Defs.' Mot. for Atty Fees 6.) In particular, the attorney who "was primarily responsible for preparing the written submissions to the Court in this case" billed 245.5 hours herself. (*Id.*) Even considering the various obstacles Defendants' legal team had to overcome, the number of hours billed by Defendants' lead attorney is high given that, insofar as written submissions to the Court are concerned, his time was dedicated more to attention and review than drafting.

16

This suggests some duplication of effort, which warrants a slight reduction in Defendants' total award.

Furthermore, Defendants cannot recover attorney fees for efforts expended on the two counterclaims that Defendants dismissed earlier. The stipulated dismissal itself specifically disclaims attorney fees and costs. These counterclaims are only responsible for a small portion of the total hours billed here given that they were included within a broader set of counterclaims. Nevertheless, a small reduction is appropriate for this reason as well. For these reasons, the Court will reduce Defendants' total attorney fee award by ten percent, from $155,418.50 to $139,876.65. Therefore,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that SUMMARY JUDGMENT is ordered in favor of Defendants and against Plaintiffs.

IT IS FURTHER ORDERED that Defendants are entitled to judgments in the following amounts:

- Against Neil Spizizen: $631,511.11 (Private Portfolio Note), as well as post-judgment interest per 28 U.S.C. § 1961.

- Against Neil Spizizen: $121,940.00 (OPP Note guaranty), as well as post-judgment interest per 28 U.S.C. § 1961.

- Against Neil Spizizen and Crescendo Homes, Inc., jointly and severally: $405,569.26 (Crescendo Note), as well as post-judgment interest per 28 U.S.C. § 1961.

IT IS FURTHER ORDERED that Defendants are entitled to attorney fees from Plaintiffs in the amount of $139,876.65.

IT IS FURTHER ORDERED that, within fourteen days of the Court's order,

Defendants satisfy this judgment -- including interest, taxable costs, and attorney's fees --

by liquidating the assets held in the Trust Account held by the Neil Spizizen Revocable

Living Trust, U/A/D 7/3/86, any remaining surplus being returned to Neil Spizizen, as

trustee for the Neil Spizizen Revocable Living Trust, U/A/D 7/3/86.


                                        s/Gerald E. Rosen
                                        Chief Judge, United States District Court

Dated: December 16,  2011



I hereby certify that a copy of the foregoing document was served upon counsel of record on
December 16, 2011, by electronic and/or ordinary mail.

                        s/Ruth A.Gunther
                        Case Manager
                         (313) 234-5137

18